**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| Geo. W. Park Seed Co., Inc., | ) | Case No. 10-02431-jw |
| et al, | ) | |
| | ) | (JOINT ADMINISTRATION) |
| Debtors. | ) | |

**ORDER GRANTING SUBSTANTIVE CONSOLIDATION**

The relief set forth on the following pages, for a total of  9  pages including this page, is hereby **ORDERED**.

**FILED BY THE COURT**
**07/22/2010**



Entered: 07/22/2010

_John E Waites_
Chief US Bankruptcy Judge
District of South Carolina

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| Geo. W. Park Seed Co., Inc., | ) | Case No. 10-02431-jw |
| et al, | ) | |
| | ) | (JOINT ADMINISTRATION) |
| Debtors. | ) | |

**ORDER GRANTING SUBSTANTIVE CONSOLIDATION**

This matter comes before the Court upon the motion ("Motion") of L. Stan Neely ("Trustee"), the Chapter 11 Trustee for Geo. W. Park Seed Co., Inc. ("Park Retail"); Park Seed Wholesale, Inc. ("Park Wholesale"); Jackson & Perkins Company, Inc. ("JPC"); J & P Acquisition, Inc. ("JPA"); and Jackson & Perkins Wholesale, Inc. ("JPW") (collectively "Debtors") for the entry of an order substantively consolidating these bankruptcy cases. Notice of the hearing on the Motion was provided on an expedited basis by order of the Court. Rosetree Nurseries, LLC filed an objection. The Unsecured Creditors Committee and Wells Fargo Bank, N.A. appeared at the hearing in support of the Trustee's Motion.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Pursuant to Rule 52, Fed. R. Civ. Pro., which is made applicable to this proceeding by Rule 7052, Fed. R. Bankr. P., the Court makes the following Findings of Fact and Conclusions of Law.[1]

**FINDINGS OF FACT**

**A.    Procedural History**

Park Retail, Park Wholesale, and JPC filed petitions for relief under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101, *et seq*., the "Bankrutpcy Code") on April 2, 2010 ("First Petition Date"). On April 8, 2010, the Court entered an order administratively consolidating these three cases and subsequently entered an order appointing the Trustee as Chapter 11 Trustee for these three debtors. An Unsecured Creditors Committee was formed for the three consolidated cases.

---

1 .  To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to

**2**

JPW and JPA filed their petitions for relief on May 10, 2010 ("Second Petition Date"). On May 21, 2010, an order was entered granting administrative consolidation of these cases with the previous three. The same Trustee was appointed as Chapter 11 Trustee for JPA and JPW. The United States Trustee then amended the appointment of the Unsecured Creditors' Committee (the "Committee") to add two new members to ensure representation by creditors of all five entities. Thus, the composition of the Committee is the same for all five administratively consolidated cases.

B.     **Unity of Ownership**

Donald and Glenda Hachenberger (the "Hachenbergers") own 100% of the stock of Park Retail, which, in turn, owns 100% of the stock of Park Wholesale. The Hachenbergers own 10% of the stock of JPA, with the other 90% owned in equal shares by three Trusts owning non-voting shares of JPA. Each of the Trusts is in the name of one of the Hachenberger's children. JPA owns 100% of JPC and JPW.

C.     **Pre-Petition Intercompany Transfers, Assets, and Liabilities**

Prior to the First Petition Date, money and assets flowed freely among the Debtors. The Debtors' management team had weekly meetings to determine which of the Debtors needed money for the week and which of the Debtors had money available. Funding needs were then allocated among all of the Debtors without regard to their source. These transfers were not always recorded on the Debtors' books and records.

Because of the intercompany transfers, the Debtors' books and records are inaccurate. It is not possible to determine with certainty which assets belong to which Debtors and which Debtors have obligations to which creditors. As a result, the information on each of the Debtors' bankruptcy schedules is not accurate.

There have been many attempts, both pre-petition and post-petition, to accurately identify and document all intercompany transfers, but these attempts have not been successful. According to testimony presented, the Debtors employed numerous professionals, prior to the First Petition Date, to attempt to untangle these Debtors' affairs. Despite spending approximately $1,000,000 on professional fees and expenses, these attempts were unsuccessful. The Trustee testified that, in his opinion, it could cost over $1,200,000 to separate these Debtors, that any such effort would take many months to complete, and that the result would necessarily remain inexact and indefinite.

---

the extent any of the following Conclusions of Law constitute Findings of Fact, they are so adopted.

**3**

**D.     Employees, Management, and Administration**

All of the Debtors' operations are conducted from a facility located in Greenwood, South Carolina which is maintained as their principal place of business.  The Debtors share a president, Charles Fox, and general counsel, Kim Thomason.  The Debtors also share the following:  general management; employees; administration; human resources; accounting; information technology; catalog services; creative support; call center personnel; and e-commerce employees.  Although the Debtors and the Trustee have made attempts to allocate the costs of these services among the Debtors, it is very difficult to value these services on a per-entity basis, and all attempted allocations are inexact.  The Debtors' technical support and information technology centers are maintained as one at the Greenwood facility and cannot be separated without extreme difficulty and a great risk of loss of information.

The majority of the Debtors' employees are under the impression that they work for one of the five Debtors, either Park Retail or one of the Jackson & Perkins entities, and do not recognize that they actually work for five entities.  This confusion extends to customers and vendors, who are often confused regarding the identity of the Debtors.

**E.     The Trustee's Efforts**

Since his appointment, the Trustee has attempted to maintain these entities as separate companies and to identify which Debtors owe which creditors, and which Debtors own which assets, but he has not been successful.  At present, JPC is set to begin production of its holiday catalog, which requires a large expenditure.  This catalog appears to be a substantial component of the value of the Debtors as a going concern.  All potential buyers of the Debtors' assets are interested in maintaining the catalog, and, if the catalog is not produced, then the interest in the purchase of the Debtors' assets will dwindle and the purchase price will be diminished.

Currently, JPC does not have the funding necessary for essential upfront expenses of the catalog. JPC has been granted multiple extensions on the payment deadlines for the catalog and cannot extend them any further.  If JPC cannot make a substantial payment to purchase paper for the holiday catalog immediately, then it will lose its paper order and be unable to produce a timely catalog.  Outside of bankruptcy and in the normal course of these Debtors' operations, Park Retail and Park Wholesale would transfer the funds to JPC to pay for these items.  However, this cannot be done within the bankruptcy, absent consolidation.  If JPC does not obtain funding for this catalog immediately, the value of the Debtors' estates will be impacted substantially.

4

## **CONCLUSIONS OF LAW**

"Substantive consolidation is an action allowed by the broad equitable powers of 11 U.S.C. § 105." *Campbell vs. Cathcart (In re Derivium Capital, LLC)*, 380 B.R. 429, 441 (Bankr. D.S.C. 2006) (citing *Sampsell v. Imperial Paper & Color Corp.,* 313 U.S. 215, 218 (1941)). In order for a court to entertain a motion for substantive consolidation there must be notice and an opportunity to be heard. *In re Bonham*, 229 F.3d 750, 765 n.9 (9th Cir. 2000).

"Courts have ordered substantive consolidation in numerous procedural contexts," including upon motion and as a contested matter. *In re Bonham*, 229 F.3d 750, 765 n. 9 (9th Cir. 2000); *see Munford, Inc. v. TOC Retail, Inc. (In the Matter of Munford, Inc.)*, 115 B.R. 390 (N.D. Ga. 1990) (substantive consolidation brought before Court via adversary proceeding by a debtor seeking to substantively consolidate with non-debtors); *In re Giller*, 962 F.2d 796 (8th Cir. 1992) (substantive consolidation of six related Chapter 11 debtors); *Fed. Deposit Ins. Corp. v. Colonial Realty Co.*, 966 F.2d 57 (2nd Cir. 1992) (substantive consolidation in Chapter 7). Courts have also ordered substantive consolidation prior to the filing of a plan of reorganization and disclosure statement. *See In re Keene Properties of South Carolina,* C/A No. 04-06897-W, slip op. (Bankr. D.S.C. Dec. 4, 2004) (substantive consolidation ordered in December 2004, with plan and disclosure statement not filed until September 2005). In all of the above cited cases, substantive consolidation was ordered outside of the context of a plan of reorganization. "No uniform guideline for determining when to order substantive consolidation has emerged." *In re Bonham*, 229 F.3d at 765. In addition, "[c]ourts have permitted the consolidation of non-debtor and debtor entities in furtherance of the equitable goals of substantive consolidation" *In re Bonham*, 229 F.3d 750, 765 (9th Cir. 2000).

South Carolina courts use the test adopted in the Second Circuit to determine whether to substantively consolidate a debtor's estate with a related entity. *Derivium*, 380 B.R. at 442 (citing *In re Keene Properties of S.C.,* C/A No. 04-06897-W, slip op. (Bankr.D.S.C. Dec. 4, 2004)). "Under this test, substantive consolidation is appropriate when 1) creditors dealt with the entities as a single economic unit and did not rely on separate identities in extending credit or 2) when the affairs of the debtor are so entangled that consolidation will benefit all creditors." *Id.; Union Sav. Bank v. Augie/Restivo Banking Co., Ltd. (In re Augie/Restivo Banking Co., Ltd.)*, 860 F.2d 515 (2nd Cir. 1988).

In *Derivium*, the following was sufficient to justify substantive consolidation: (1) the affairs of Derivium and the non-debtor entities were so entangled that their pre-petition operations were as a single entity for all practical purposes; (2) consolidation would benefit creditors because untangling the

**5**

pre-petition affairs would be unduly expensive; (3) Derivium and the non-debtor entities had unity of ownership; (4) debt, guarantees, and cash were shared between Derivium and the non-debtors, as well as transfers of assets without observation of corporate formalities; (5) Derivium and/or at least one of the non-debtors were grossly undercapitalized; (6) the estate would benefit by avoiding the harm caused by the non-debtors from transfers of assets and other actions; (7) the estate would benefit by increasing assets for distribution; (8) the estate would benefit by streamlining the liquidation/distribution processes; and (9) creditors of Derivium and the non-debtors did not rely on their separate identities when extending credit.

Application of these elements to the facts in the instant case reveals the following:

*Entangled Pre-Petition Affairs and Operation as a Single Entity*

Prior to April 2, 2010 (the "First Petition Date"), the Debtors operated as one entity and commonly commingled funds. At that time, the Debtors operated out of one facility, shared employees and management, and shared resources. The operations were so entangled that customers, employees, and vendors had difficulty distinguishing between the Debtors and were often confused by the different Debtor entities.

*Expense to Untangle and Effect on Creditors*

The affairs of these Debtors appear to be hopelessly entangled. The Trustee indicates that any attempt to separate the estates would cost over $1,000,000 and would take many months to complete. Consolidation prevents the need for these expenditures and provides creditors the best opportunity to receive a distribution. Benefit to these creditors is indicated by the fact that consolidation is supported by the Unsecured Creditors Committee.

*Unity of Ownership*

The Debtors are all owned by the same family or entities owned by that family.

*Commingling of Funds and Transfers without Observation of Corporate Formalities*

Money flowed freely between the Debtors pre-petition, and these transfers were not always properly recorded. Corporate formalities with regard to transactions and interaction among the Debtors were not always observed. As a result of these intercompany transfers, which have taken place over an extended period of time, the Debtors and Trustee cannot determine with any degree of certainty which debts belong to which Debtor or which assets belong to which Debtor.

*Benefit to Undercapitalized Debtor*

6

Without substantive consolidation, one of the Debtor entities will be unable to fund the holiday catalog which is essential to all of the Debtors' continued operations and significant to potential purchasers. Consolidation will allow the transfer of funds among the entities and will allow the Debtors to meet the deadlines placed on the production of this holiday catalog. The testimony presented by the Trustee indicates that substantive consolidation is critical to effectuate the best means of reorganization.

*Avoiding Harm to the Estate*

The facts of the present case do not involve a non-debtor entity whose actions might harm the estate. Therefore, this element does not apply to the instant case. There is no evidence, however, that consolidation would harm the estates in any way, and in fact the testimony revealed just the opposite.

*Increasing Assets for Distribution and Streamlining the Distribution Process*

At present, it is undetermined which creditors are entitled to distributions from which of the Debtors' estates, or which assets belong to which estates. These determinations will be costly and time consuming, and the results inexact. By the time these Debtors' affairs are untangled, if that is even possible to achieve, there is no guarantee that all creditors will receive a distribution. Substantive consolidation of the Debtors will streamline the distribution process, making it more likely that the creditors will receive distributions, and more likely that the creditors will receive distributions in a timely manner.

*Creditors Did Not Rely on Separate Identities when Extending Credit*

Creditors were often confused with regard to the identity of the Debtor, and many creditors treated the Debtors as if they were one entity. Although more than one of the Debtor entities may have done business with a particular creditor, the Debtors often had only one account with those creditors. Thus, creditors did not rely on separate corporate identities when extending credit to the Debtors.

Analyzing the factors above, the Court is satisfied that there is sufficient justification to substantively consolidate the Debtors' bankruptcy estates. Based upon the foregoing findings and conclusions, it is hereby **ORDERED, ADJUDGED AND DECREED** that:

1. The Trustee has provided sufficient notice of the Motion and hearing pursuant to the order of the Court and in compliance with Federal Rule of Bankruptcy Procedure 4001.

2. The Motion is granted and the Debtors' estates are substantively consolidated, effective July 12, 2010, under Case No. 10-02431-jw; provided that nothing herein contained shall affect the cash collateral orders previously entered in these proceedings; and provided further that the secured status of

valid liens, mortgages, and security interests are preserved, without change, to the extent such mortgages, liens, and security interests were secured as of the effective date of this order.

**AND IT IS SO ORDERED.**