## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number:  **10-02431-jw**

## AMENDED SUPPLEMENTAL ORDER

The relief set forth on the following pages, for a total of 23 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**11/12/2010**



*[signature]*
Chief US Bankruptcy Judge
District of South Carolina

Entered: 11/12/2010

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 10-02431-JW |
| | Chapter 11 |
| Geo. W. Park Seed Co., Inc., et al. | (CONSOLIDATED) |
| | **AMENDED[1] SUPPLEMENTAL ORDER AUTHORIZING THE USE OF CASH COLLATERAL & SETTING DEADLINES FOR ALLOCATION OF PROCEEDS AND DETERMINATION OF CARVE-OUT** |
| Debtor(s). | |

This matter is before the Court on the Motion for the Use of Cash Collateral Through January 2011 ("Motion") filed by L. Stan Neely, Chapter 11 Trustee for Geo. W. Park Seed Co., Inc. ("Park Retail"); Park Seed Wholesale, Inc. ("Park Wholesale"); Jackson & Perkins Company, Inc. ("JPC"); Jackson & Perkins Wholesale, Inc. ("JPW"); and J&P Acquisition, Inc. ("JPA") (collectively "Debtors").  Wells Fargo Bank, N.A. ("Wells Fargo") filed a timely objection to the Motion, which was joined by Glenda Hachenberger. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Pursuant to Fed. R. Civ. P. 52, which is made applicable to contested matters by Fed. R. Bankr. P. 7052 and 9014(c), the Court makes the following Findings of Fact and Conclusions of Law.

---

[1]     This Order is being amended following the receipt of correspondence from counsel for the Chapter 11 Trustee, L. Stan Neely, indicating a discrepancy with the numbers used on Exhibit A with regard to the "Approved Fees," which is described more fully herein.

**FINDINGS OF FACT**

1.      Park Retail, Park Wholesale, and JPC filed petitions for relief under Chapter 11 of the Bankruptcy Code on April 2, 2010 ("First Petition").  The cases were filed as a result of a domestic deadlock between Donald Hachenberger ("D. Hachenberger") and Glenda Hachenberger (collectively, the "Hachenbergers"), who are shareholders of or assert a property interest in some or all of these entities.[2] The goal of the filings appears to have been to obtain unity of control and preserve the value of the entities as a going concern either through continuing operation or a quick sale.  The evidence indicates that the Hachenbergers contemplated the immediate appointment of a Chapter 11 trustee in the cases to assume control over the entities.

2.      On April 8, 2010, the Court, after notice and a hearing, entered orders administratively consolidating these three cases and appointing L. Stan Neely ("Trustee") as the Chapter 11 Trustee for Debtors.  D. Hachenberger, who asserts a security interest in and lien upon the assets of Debtor, was represented by counsel at the hearing on the Motion to Appoint the Trustee and supported the appointment of the Trustee. Although the evidence indicates that Glenda Hachenberger was represented by experienced bankruptcy counsel in South Carolina at that time, she did not file an objection or response to the Motion to Appoint the Trustee.

3.      An Unsecured Creditors Committee was appointed by the United States Trustee for the three consolidated cases.

4.      On May 10, 2010, JPW and JPA filed petitions for relief under Chapter 11 of the Bankruptcy Code.

---

[2]      The allocation of ownership interests in the entities between Glenda Hachenberger and D. Hachenberger is disputed and is related to a pending motion.

5.      From the inception of these cases, it was immediately apparent that Debtors' business affairs were completely entangled and impossible to separate.  In many respects, the five Debtors operated as one entity out of a single facility in Greenwood, SC, sharing employees, management, and resources.  Money and assets flowed freely among Debtors and complete and accurate books and records for the five Debtors were not maintained.

6.      In light of the integrated nature of Debtors' operations, an order was entered on May 21, 2010, granting JPW and JPA's request for entry of an order directing joint administration of JPW and JPA with the Park Retail, Park Wholesale, and JPC cases.  The Trustee was also appointed as Chapter 11 Trustee for JPA and JPW, and the United States Trustee amended the appointment of the Unsecured Creditors' Committee to add two new members to ensure representation by creditors of all five entities.

7.      On July 8, 2010, the Court entered a Consent Order with respect to Interim Applications for Compensation for the Trustee, Trustee's Counsel, and the Trustee's Accountant.  The Consent Order authorized payment of the professional fees (out of cash collateral previously authorized to be used for that purpose) in the total amount of $81,518.50 for the Trustee, $141,415.76 for Trustee's Counsel, and $52,882.76 for the Trustee's Accountant.

8.      On July 19, 2010, the Trustee filed a Motion to Sell Free and Clear of Liens a Substantial Portion of Debtors' Operating Assets ("Sale Motion").  Wells Fargo filed an objection to the Sale Motion, which was subsequently withdrawn.  Despite receiving notice of the Sale Motion, no objection or response was filed by the Hachenbergers.

9.      On July 22, 2010, the Court entered an order substantively consolidating Debtors' bankruptcy cases, effective as of July 12, 2010 ("Substantive Consolidation Order"). The Substantive Consolidation Order provided that substantive consolidation did not affect the previous orders entered concerning the use of cash collateral. The Substantive Consolidation Order was agreed to by Wells Fargo and the other secured creditors.  The Hachenbergers did not object to the substantive consolidation of the cases.

10.      On August 2, 2010, the Court entered Consent Orders Allowing Interim Compensation for the Trustee, Trustee's Counsel, and the Trustee's Accountant.  The Consent Orders authorized the payment of professional fees and costs (out of cash collateral previously authorized to be used for that purpose) in the total amounts of $59,848.61 for the Trustee, $93,603.42 for Trustee's Counsel and $64,997.63 for the Trustee's Accountant.

11.      On August 23, 2010, the Court approved the sale of substantially all of Debtors' assets to J&P Park Acquisitions, Inc. ("JPPA"), which assets included real estate located in Greenwood, South Carolina.  The sale closed on August 25, 2010 (the "Closing"), for a total consideration of $12,782,560.00, including a cash payment of $8,264,095.56.   The order authorizing the sale ("Sale Order"), entered on August 25, 2010, included the following provisions, which were negotiated and reviewed by Wells Fargo, the Trustee, and the Unsecured Creditors' Committee, among others:

  a. "The Trustee proposes that all other proceeds of the sale shall be held pending further order of this Court.  Distribution of these proceeds will be subject to a carve-out amount for unsecured creditors and for payment of administrative claims."

4

b. "[A] Plan and Disclosure Statement providing details regarding the proposed distribution of the sale proceeds will be filed after further determinations regarding the avoidance, validity, extent and priority of certain alleged liens against the estate."

c. "The Trustee intends to seek additional use of cash collateral to fund administrative expenses necessary to complete the administration of the case."

d. "The amount of the carve-out is to be determined by separate order."

e. "The Trustee is authorized to pay any and all approved administrative claims from the sale proceeds, and the Trustee shall otherwise hold the remaining sale proceeds pending further order of the Court."

f. "Wells Fargo reserves its right to object to the amount of the proposed carve-out for unsecured creditors, and no sales proceeds other than court approved administrative expense claims will be distributed absent further order of the Court."

12.    All objections to the sale, including the objection filed by Wells Fargo, were resolved by the terms of the Sale Order and thus withdrawn. Wells Fargo participated in the drafting of the Sale Order.  The evidence is clear that if the Trustee had not completed the sale process in an expedited fashion, the assets of the estate would have significantly diminished in value because the Trustee would have had to cease Debtors' business operations.   It is undisputed that the sale was successful and beneficial to the estate and the secured creditors.

13.     On August 23, 2010, the Court also entered Orders Allowing Interim Compensation for the Trustee, Trustee's Counsel, and the Trustee's Accountant.  These orders approved the following amounts for the payment of professional fees and costs: $61,819.80 for the Trustee, $137,021.59 for Trustee's Counsel and $50,328.91 for the Trustee's Accountant. These amounts were paid from the sale proceeds and not funds previously approved in prior cash collateral orders.  Neither the Court nor the secured creditors were aware of this fact.

14.     Wells Fargo and the Hachenbergers, *inter alia*, assert a security interest in and lien on the assets of Debtors, consisting of certain personal property and accounts receivables, and on the cash proceeds of the sale of the assets by virtue of a mortgage or judgment lien on the real estate.  The extent of their respective liens on the remaining assets of the estates is disputed and the subject of two pending adversary proceedings in this case.  In order to address issues regarding the validity and priority of their liens in the context of the cash collateral hearing, Wells Fargo and the Hachenbergers indicated for the first time at the hearing on the Motion that they have reached an agreement between themselves as to the allocation of their respective liens on the assets of the estates.

15.     The following orders authorizing Debtors' use of cash collateral have been entered, after notice and a hearing, since the filing of the First Petition:

        a.  Interim Order Authorizing the Use of Cash Collateral through April 19, 2010, as to Park Retail, Park Wholesale, and JPC (entered April 8, 2010). The budget attached to the order provided for the use of cash collateral for professional fees and stated that "it is assumed that there

will be a carve-out from the proceeds of the liquidation sufficient to pay the remaining fees."

b.  Second Interim Order Authorizing the Use of Cash Collateral through April 30, 2010, as to Park Retail, Park Wholesale, and JPC (entered April 21, 2010. The budget attached to this order also provided for the use of cash collateral for professional fees and stated that "it is assumed that there will be a carve-out from the proceeds of the liquidation sufficient to pay the remaining fees."

c.  Final Order Authorizing the Use of Cash Collateral through June 30, 2010, as to Park Retail, Park Wholesale, and JPC (entered April 27, 2010).  Wells Fargo and D. Hachenberger expressly agreed to the use of the cash collateral by the Trustee in accordance with the budget attached to the order, including the use of such cash collateral for professional fees.

d.  Interim Order Granting Debtors' Motion for the Use of Cash Collateral through June 11, 2010, as to JPW and JPA (entered May 21, 2010). Wells Fargo expressly consented to the entry of this order, which included an allocation of cash collateral to be used for professional fees within the attached budget.  The section of the budget addressing professional fees specifically provided that "[i]t is assumed proceeds of the liquidation will pay the remaining professional fees." The order further provides that the amount designated for professional fees and

expenses shall be held in escrow by counsel for the Trustee pending

further order of the Court.

e.   Consent Order Authorizing the Use of Cash Collateral through July 9,

2010, as to JPC (entered June 11, 2010).   Wells Fargo and D.

Hachenberger consented to the entry of this order, which also included

an allocation of cash collateral to be used for professional fees within

the attached budget. The section of the budget addressing professional

fees specifically provided that "[i]t is assumed proceeds of the

liquidation will pay the remaining professional fees."   The order also

provides that Wells Fargo "reserves all of its rights and remedies with

respect to professional fees and expenses and the right to object to any

fee application filed by a professional in these cases," and that

"[n]othing contained [in the order] shall constitute a finding or

determination that the assets securing Wells Fargo's claim shall be

surcharged pursuant to 11 U.S.C. § 506(c) and all rights and

determinations with respect to section 506(c) are reserved under the

terms of this order" ("Reservation of Rights Paragraph").

f.   Final Order Authorizing the Use of Cash Collateral through August

27, 2010, as to JPW and JPA (entered June 11, 2010).   Wells Fargo

consented to the entry of this order, which also included an allocation

of cash collateral to be used for professional fees within the attached

budget. The section of the budget addressing professional fees also

provided that "[i]t is assumed proceeds of the liquidation will pay the

8

remaining professional fees." The order also included the Reservation of Rights Paragraph with respect to Wells Fargo.

g. Consent Order Authorizing the Use of Cash Collateral through August 27, 2010, as to Park Retail and Park Wholesale (entered June 11, 2010). Wells Fargo and D. Hachenberger consented to the entry of this order, which also included an allocation of cash collateral to be used for professional fees within the attached budget. The section of the budget addressing professional fees also provided that "[i]t is assumed proceeds of the liquidation will pay the remaining professional fees." The order also included the Reservation of Rights Paragraph with respect to Wells Fargo.

h. Consent Order Authorizing the Use of Cash Collateral through July 12, 2010, as to JPC (entered July 8, 2010). This order was consented to by Wells Fargo and D. Hachenberger, and provided that all other provisions of the June 11 Consent Order remain in full force and effect, including the Reservation of Rights Paragraph with respect to Wells Fargo.

i. Consent Order Authorizing the Use of Cash Collateral through August 27, 2010, as to JPC, and Allowing the Use of Cash Collateral Between and Among Debtors (entered July 13, 2010). Wells Fargo and D. Hachenberger consented once again to the extension of the use of cash collateral. The order also included the Reservation of Rights Paragraph with respect to Wells Fargo.

16.    By Consent Orders entered August 30, 2010, September 13, 2010, September 21, 2010, and October 5, 2010, the Court authorized the Trustee to use cash collateral through October 19, 2010. These orders did not provide for the use of cash collateral for professional fees, but did include the Reservation of Rights Paragraph with respect to Wells Fargo.

17.    On September 16, 2010, the Trustee filed the Motion, seeking the use of cash collateral for payment of operating expenses and professional fees through January 2011, which the Trustee alleges are necessary in order to get the case through confirmation[3] and a distribution of the remaining assets of the estate.    Wells Fargo filed an objection to the Motion on September 29, 2010. The objection primarily raised an issue with the total amount of professional fees being requested in the Motion.  Glenda Hachenberger filed a joinder to Wells Fargo's objection on October 1, 2010.  By separate order entered on October 26, 2010, the Court authorized the use of cash collateral for the operating expenses only, since this portion of the request was not contested.

18.    On September 30, 2010, the Court entered Orders Allowing Interim Compensation for the Trustee, Trustee's Counsel, and the Trustee's Accountant.  These orders approved the following amounts for the payment of professional fees and costs: $81,441.33 for the Trustee, $174,338.27 for Trustee's Counsel and $66,570.09 for the Trustee's Accountant.  These amounts were paid from the sale proceeds and not funds previously approved in prior cash collateral orders.  Neither the Court nor the secured creditors were aware of this fact.

---

[3]    By Order entered October 20, 2010, the deadline for filing a plan and disclosure statement was extended to November 26, 2010, by agreement of the parties, including Wells Fargo and the Hachenbergers.

19.     At the hearing on the Motion, the cash collateral budget request for professional fees was reduced by the professionals for the Trustee and the Creditors Committee in order to eliminate litigation fees and costs associated with litigating the adversary proceedings against Wells Fargo and the Hachenbergers, which challenge the validity and priority of their liens.

20.     Wells Fargo and the Hachenbergers suggested at the hearing that a liquidating plan should be filed so that professional fees could be reduced, but indicated that they did not intend to file a competing plan.  Both indicated that they did not object to the use of some cash collateral for professional fees in order to allow the Trustee to propose a plan in order to distribute the remaining assets of the case, but argued that the allowed cash collateral should be limited.  Nevertheless, the parties could not agree on an amount to be approved and the objections were maintained.

21.     On November 9, 2010, the Court received correspondence from Trustee's Counsel advising of a discrepancy with the numbers used on Exhibit A with regard to "Approved Fees." Specifically, Trustee's Counsel indicated that the amounts set forth in the Approved Fees column of Exhibit A did not include amounts that had been approved to be paid out of non-sale proceeds pursuant to Consent Orders entered on July 7, 2010 and August 2, 2010. Collectively, these Consent Orders approved the payment of $235,019.18 for Trustee's counsel, $117,880.39 for Trustee's Accountant, and $141,367.11 for the Trustee.  Furthermore, Trustee's Counsel advised that the amounts of "Approved Fees" indicated in Exhibit A had in fact been paid out of the sale proceeds and therefore had not been paid out of the "Authorized Cash Collateral Amount." Accordingly, based on information provided by Trustee's Counsel, it appears that the

Trustee currently has a surplus of cash collateral that has been previously authorized to be used for professional fees in the following amounts:  $100,632.89 for the Trustee, $329,980.82 for Trustee's Counsel, $110,119.61 for the Trustee's Accountant, and $165,000.00 for Counsel for the Unsecured Creditors' Committee.

## CONCLUSIONS OF LAW

The issue remaining before the Court on the Motion is the use of cash collateral to pay fees and costs incurred by professionals for the Trustee and the Unsecured Creditors Committee.[4] The majority of the alleged cash collateral remaining in this case consists of the proceeds from the Trustee's sale of substantially all of the assets of the estate. Unfortunately, the professionals and the secured creditors did not agree to a specific, detailed carve-out from the proceeds of the pre-confirmation sale prior to the completion of such sale.  The facts illustrate why it is a prudent practice to negotiate a specific carve-out for unsecured creditors and administrative expenses prior to a pre-confirmation sale of substantially all of the assets of the estate, particularly where the anticipated proceeds from such sale are the primary assets of the case and are projected to be less than the purported value of existing liens.

Under the procedure employed in this case to date, the professionals have sought preapproval of the use of cash collateral to be designated for fees and expenses in a monthly amount in advance of any fee application.  This procedure required numerous cash collateral orders and hearings.   The amounts of cash collateral approved for

---

[4]        An Order Granting in Part the Extension for Use of Cash Collateral for Operating Expenses through January 2011 was entered on October 26, 2010.

professional fees compared to the amounts authorized pursuant to the fee application process are shown on Exhibit A, which is attached hereto.[5]

The Bankruptcy Code allows for the use of cash collateral by the Trustee on certain conditions. Section 363(c)(2) provides:

> The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
> (A)     each entity that has an interest in such cash collateral consents; or
> (B)     the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

Under § 363(e), if the trustee proposes to use the cash collateral of a secured creditor without its consent, on the request of such secured creditor, the court must prohibit or condition the use of such cash collateral as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e). Pursuant to § 363(p), the trustee has the burden of proof on the issue of adequate protection and the secured creditor has the burden of proof on the issue of the validity, priority, and extent of their interests in the property. 11 U.S.C. § 363(p).

The Trustee argues that Wells Fargo and the Hachenbergers consented to the use of cash collateral by virtue of their agreement to the Sale Order. The Sale Order provides that "the Trustee is authorized to pay any and all administrative claims from the sale proceeds," and that "no sales proceeds other than court approved administrative expense claims will be distributed absent further order of the Court." The Trustee argues that this language clearly recognizes that funds would be needed for the remaining administration of the estate and that those funds would come from the sale proceeds. By withdrawing its objection to the sale and agreeing to the Sale Order, the Trustee argues that Wells Fargo

---

[5]      The total amounts of Authorized Cash Collateral set forth on Exhibit A were provided to the Court by Trustee's counsel and were agreed to by counsel for the Unsecured Creditors' Committee.

consented to the payment of approved professional fees and any and all other approved administrative expenses with the sale proceeds. Likewise, the Hachenbergers consented to the payment of such fees and administrative expenses by failing to object to the sale or the Sale Order, despite having received notice of the sale and the entry of the Sale Order and each being separately represented by experienced bankruptcy counsel.

Wells Fargo objects to the Motion, arguing that the Sale Order should be viewed as only covering approved administrative expenses incurred up through the sale and it has not consented to the use of its cash collateral for professional fees incurred after the sale. Beginning with the cash collateral orders entered on June 11, 2010, Wells Fargo expressly reserved all of its rights and remedies with respect to the use of cash collateral for professional fees and expenses and the right to object to any fee application filed by a professional in these cases. Wells Fargo further contends that it is entitled to adequate protection pursuant to § 363(e). Glenda Hachenberger joins in Wells Fargo's objection to the Motion.

From a very early point in this case, it appeared to the Trustee that an expedited preconfirmation sale of the assets was the only manner of preserving value for the benefit of all creditors. Since July 2010, the Trustee's objective has been to complete a sale of the assets of the estates as a going concern and distribute the proceeds of such sale through a confirmed plan of reorganization. All parties appeared to agree that this was the best approach to a complicated situation caused by the Hachenbergers' domestic deadlock, which affected control of the entities, because the sale of the businesses as a whole while they were still operating would yield the most recovery for the creditors of

the estates. At each stage leading up to the sale, Wells Fargo and D. Hachenberger[6]
cooperated with the Trustee in order to achieve this objective by agreeing to the entry of
orders allowing the use of cash collateral for the professional fees needed to complete this
process and agreeing, on an expedited basis, to the entry of the Sale Order allowing
substantially all of the assets to be sold.  The evidence is clear that had the Trustee not
proceeded with the sale process in such an expedited fashion, the Trustee would have
been unable to sell the assets of Debtors' estates as a going concern and the assets would
have diminished in value.  As a result of the Trustee's efforts, the sale was successful and
beneficial to the estates and the secured creditors, including Wells Fargo and the
Hachenbergers.

Due to the expedited nature of the sale process,[7] caused in part by pressure from
the stalking horse bidder to close the transaction quickly, the parties represented that they
were unable to reach an agreement as to a carve-out for unsecured creditors and
administrative expense claims.  However, the terms of the Sale Order clearly contemplate
that a carve-out of some amount would be established and that cash collateral would be
used for professional fees necessary to get the case through confirmation. The Sale Order
expressly provided that a Plan and Disclosure Statement providing details regarding the
proposed distribution of the sale proceeds would be filed. By agreeing to the Sale Order,[8]
Wells Fargo and D. Hachenberger bargained for the use of their cash collateral to get the

---

[6]      The testimony and other evidence presented indicated that Glenda Hachenberger was represented
by experienced South Carolina bankruptcy counsel from the inception of the case and received notice of
these matters, yet she never formally approved, objected, or filed a response.  The evidence presented
further indicated that she was in favor of the filing of the bankruptcy cases, the appointment of the Trustee,
and the sale of the business as a going concern.
[7]      The Trustee's Motion to Sell Substantially All of the Assets of the Estate was filed on July 19,
2010.  The Bidding Procedures Order was entered July 28, 2010, and was amended August 10, 2010, and
the auction was conducted by the Court on August 23, 2010.
[8]      Wells Fargo participated in the drafting of the Sale Order.

case through confirmation.  <u>See</u> <u>In re McCombs</u>, No. 06-35891-H4-7, 2010 WL 3257864 (Bankr. S.D. Tex. Aug. 17, 2010) (finding that the secured creditor waived its right to object to the Trustee's compensation when it chose not to object to the sale of its collateral); <u>Canzano v. Ragosa</u> (In re Calarusso), 280 B.R. 548, 558-59 (Bankr. D.Mass. 2002) (finding that the defendant waived her right to assert a property interest in the debtor's sold property because she received notice of the sale, participated in the sale personally, and chose not to object to the sale).  Moreover, several of the prior cash collateral orders entered in the case, which were consented to by Wells Fargo and D. Hachenberger, provided that "[i]t is assumed proceeds of the liquidation will pay the remaining professional fees."

At the hearing on the Motion, both Wells Fargo and the Hachenbergers indicated that they were not opposed to the use of some cash collateral to get the case to confirmation, but both emphasized that the budget for professional fees needed to be significantly reduced.  The Hachenbergers argued that the professional fee authorization needed to be limited to the amounts necessary to get the case through confirmation and should not include fees for litigation against secured creditors, unnecessary or premature claims analysis and the resolution of the issue of allocation of the liens held by Wells Fargo and D. Hachenberger on the sale proceeds, as the determination of these issues is not critical to get this case to the confirmation stage.  During the hearing, the professionals for the Trustee and the Unsecured Creditors' Committee agreed to reduce their respective cash collateral requests by eliminating costs for litigation against the secured creditors from their estimated fees and eliminating the Trustee's fee from the budget (since he would be requesting a commission), but disagreed that an analysis of the

16

claims and resolution of the allocation issue were unnecessary to get through confirmation.

Under the circumstances of this case, the Court finds that it is necessary for the Trustee, the Trustee's professionals, and the Unsecured Creditors Committee's professionals to complete their work in order to achieve distribution through a confirmed plan.  This work includes finalizing, by agreement or court order, the amount of the carve-out for the benefit of administrative claims and unsecured creditors. The Court further finds that Wells Fargo and the Hachenbergers have consented to the use of cash collateral to get the case through the effective date of confirmation, either expressly or implicitly, through their agreement to the Sale Order and prior cash collateral orders. Furthermore, the Court finds that Wells Fargo and the Hachenbergers' interests in this use of cash collateral are adequately protected by virtue of the fee review and approval process and the orderly distribution to creditors governed by an approved plan and disclosure statement.  No evidence was presented demonstrating the validity, priority, and extent of their liens or that their collateral position is eroding beyond what they bargained for by their agreement to the Sale Order.[9]  Neither Wells Fargo nor the Hachenbergers have sought a different course for this case by filing motions to dismiss or convert or by seeking relief from the automatic stay with respect to the sale proceeds.  Accordingly, the Court finds that Wells Fargo and the Hachenbergers' interests are adequately protected and declines their request for a lien on proceeds of all avoidance actions as a means of additional adequate protection.

---

[9]   Moreover, it appears that their interests in the cash collateral are disputed by the Trustee and are the subject of adversary proceedings in this case.

Nevertheless, the Court agrees that the budget for professional fees should be reduced to the amounts reasonably necessary to get the case through the effective date of a confirmed plan. However, the Court does not wish to specifically dictate the Trustee's efforts or restrict the Trustee from performing any necessary claims analysis or from determining the allocation of Wells Fargo and the Hachenbergers' liens on the remaining cash collateral.[10] Although the Court will not limit the Trustee's actions in this case, it does caution the Trustee and the professionals for the Trustee and Unsecured Creditors' Committee against engaging in efforts that are not reasonably necessary. The Trustee and the professionals for the Trustee and Unsecured Creditors' Committee should focus their efforts on matters associated with plan confirmation and eliminate or delay unnecessary action that may result in increased fees. At this point in the case, it appears that all claims may not need to be analyzed. With respect to the allocation issue, while Wells Fargo and the Hachenbergers stated that they have agreed on such an allocation between themselves, such agreement has not been documented and the parties do not appear to be bound to such agreement. Therefore, the Court cannot rely on such agreement, and hereby orders any creditors who assert an interest in the cash collateral to file any agreement as to the allocation of their interests in the sales proceeds with the Court and serve such agreement on counsel for the Trustee and the Unsecured Creditors Committee **on or before November 15, 2010**. The Trustee and the Unsecured Creditors Committee may file objections, if any, within seven (7) days thereafter. **If an objection is filed, the Court shall conduct a hearing on the objection on November 30, 2010 at 9:30 a.m. at the J. Bratton Davis United States Bankruptcy Courthouse, 1100 Laurel Street, Columbia, SC 29201.**

---

[10] This step may be critical to the case and future determination of cash collateral use by the Court.

The Court further believes that the determination of the carve-out for unsecured creditors is critical to the completion of this case, and the Trustee, the Unsecured Creditors Committee, and the secured creditors should complete their negotiations regarding the carve-out and **file a report with the Court on or before November 23, 2010. The Court will conduct a hearing on the issue of the carve-out for unsecured creditors on November 30, 2010 at 9:30 a.m. at the J. Bratton Davis United States Bankruptcy Courthouse, 1100 Laurel Street, Columbia, SC 29206.**

Based on the foregoing, the Court finds that the use of cash collateral is in the best interests of the estates and the creditors.   According to the figures provided by the Trustee's counsel, it appears that the balance of cash collateral previously approved for professional fees, which is held in the Trustee's professional fee retainer account,[11] exceeds the amount of fees and expenses either approved or applied for through September 25, 2010, as shown in Exhibit A. Since the Trustee appears to have sufficient cash collateral (which was previously approved for professional fees) in his professional fee retainer account to cover projected professional fees through January 2011, it is unnecessary to authorize the use of additional cash collateral for Trustee's Counsel and the Trustee's Accountant at this time.[12] In addition to amounts previously approved, the

---

[11]     As a result of the hearing, the Court was made aware that prior amounts of cash collateral authorized for use for professional fees were being held in either the Trustee's operating account or the Trustee's professional fee retainer account.  Following the Court's suggestion that the entirety of these funds should be specifically identified, disclosed, and held in the Trustee's professional fee retainer account, counsel for the Trustee has advised that the funds representing cash collateral previously authorized for professional fees in the operating account have been moved to the Trustee's professional fee retainer account.  After the issuance of the Order on November 5, 2010, the Trustee advised that at the time of the filing of his motion for use of cash collateral on September 16, 2010, he had sufficient funds for the payment of his professionals for projected services through January 2011, in either a professional fee retainer account or in his operating account, which had been authorized by prior cash collateral orders.  It appears that the secured creditors were also unaware of this status.

[12]     Based on the information provided by Trustee's Counsel in her November 9, 2010 correspondence, the Court observes that a lot of time, effort, and judicial resources associated with a contested hearing and the preparation of an order could have been saved had the Trustee limited his request

Trustee is authorized to use cash collateral for professional fees incurred by counsel for the Unsecured Creditors' Committee through January 2011 in the additional amount of $150,000.00. The Trustee is further authorized to use cash collateral for the U.S. Trustee fees in the amount of $40,000.00, since this was not authorized by the Court's earlier order on the Motion.

**To the extent cash collateral designated to pay professional fees and expenses is not used or the fees and expenses are not approved, such sums shall remain escrowed by the Trustee or Trustee's counsel and shall be timely reported to the Court.  Likewise, to the extent that approved fees and expenses for the period of time covered by this order exceed the cash collateral designated herein, the court may increase the allowance for use of cash collateral for that purpose without further hearing.**  The cases having been substantively consolidated, Debtors are authorized to use cash collateral between and among Debtors.  The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**AND IT IS SO ORDERED.**

---

to the approval of the use of additional cash collateral for expenses and professional fees that were necessary to carry the case through the effective date of a confirmed plan.  Under the circumstances, the Court questions the appropriateness of professional fees associated with the hearing and related work on the cash collateral motion filed September 16, 2010.

20

## EXHIBIT A

### Cash Collateral Authorized and Fees Approved thru 8/27/10
### (Paid per the Trustee from Non-Sale Proceeds) *

| Professional | Authorized Cash Collateral Amount | Approved Fees | Balance |
|---|---|---|---|
| Trustee's counsel | $565,000.00 | $235,019.18 | $329,980.82 |
| Accountant | $228,000.00 | $117,880.39 | $110,119.61 |
| Trustee | $242,000.00 | $141,367.11 | $100,632.89 |
| Creditors' Committee Counsel | $165,000.00 | $0 | $165,000.00 |
| **TOTAL** | $1,200,000 | $494,266.68 | $705,733.32 |

### Cash Collateral Authorized and Fees Approved thru 8/27/10
### (Paid per the Trustee from Sale Proceeds) *

| Professional | Authorized Cash Collateral Amount (per Sale Order) | Approved Fees | Balance |
|---|---|---|---|
| Trustee's counsel | $311,359.86 | $311,359.86 | $0 |
| Accountant | $116,899.00 | $116,899.00 | $0 |
| Trustee | $143,261.13 | $143,261.13 | $0 |
| Creditors' Committee Counsel | $0 | $0 | $0 |
| **TOTAL** | $571,519.99 | $571,519.99 | $0 |

\* The distinction regarding the source of payment between non-sale proceeds and sale proceeds has been made by the Trustee.  It appears that the secured creditors have consistently asserted a cash collateral interest in both sources.

21

**Pending Fee Approval Requests**

| Professional | Time Period | Total Requested Fees & Expenses |
|---|---|---|
| Trustee's counsel | 8/26/10 – 9/25/10 | $96,363.47 |
| Accountant | 8/26/10 – 9/25/10 | $44,336.72 |
| Trustee | 8/26/10 – 9/25/10 | $48,901.50 |

If the pending fee approval requests are applied to the Balance of Cash Collateral Authorized, the remaining balance of cash collateral previously approved for professional fees before the entry of this Order is:

| | |
|---|---|
| **Trustee's counsel:** | **$233,617.35** |
| **Accountant:** | **$65,782.89** |
| **Trustee:** | **$51,731.39** |
| **Creditors' Committee Counsel** | **$165,000.00** |
| **TOTAL:** | **$516,131.63** |