**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 10-02431-JW (Substantively Consolidated) |
| Geo. W. Park Seed Co., Inc., <u>et al.</u>, | Chapter 11 |
| Debtor(s). | **ORDER** |

This matter comes before the Court upon the Motion and Memorandum of San Joaquin Horticulture, LLC ("SJH") for Allowance and Payment of an Administrative Superpriority Claim ("Motion") filed on November 18, 2010. In the Motion, SJH asserts that is it entitled to an administrative superpriority claim under 11 U.S.C. § 507(a) and (b)[1] on the basis that the adequate protection provided by the Trustee to SJH for its claim secured by cash collateral has failed, causing SJH to suffer loss in its secured position. Objections to the Motion were filed by the Chapter 11 Trustee ("Trustee"), the Official Committee of Unsecured Creditors, and Wells Fargo Bank.[2] A hearing was held on the Motion on December 7, 2010. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Civil Rule 83.IX.01, DSC. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(A) and (B). The Court makes the following findings of fact and conclusions of law.[3]

**FINDINGS OF FACT**

1.  Geo. W. Park Seed Co., Inc. ("Park Retail"), Park Seed Wholesale, Inc. ("Park Wholesale"), and Jackson & Perkins Wholesale, Inc. ("JPW") (collectively, "First

---

[1] Further references to the Bankruptcy Code shall be by section number only.
[2] At the hearing, Wells Fargo withdrew its objection after a resolution of all of its outstanding issues with the Trustee and the UCC.
[3] To the extent any of the following findings of fact constitute conclusions of law, they adopted as such, and to the extent any conclusions of law constitute findings of fact, they are so adopted.

Three Cases") filed petitions for relief under Chapter 11 of the Bankruptcy Code on April 2, 2010. The Court, after notice and hearing, entered orders administratively consolidating the First Three Cases.

2. On April 16, 2010, the Court entered an order appointing L. Stan Neely as the Chapter 11 Trustee for the First Three Cases.

3. An Unsecured Creditors Committee was appointed by the United States Trustee for the First Three Cases.

4. On May 10, 2010, J & P Acquisitions ("JPA") and Jackson & Perkins Wholesale, Inc. ("JPW") also filed petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, "Second Two Cases") and the Court entered an order on May 21, 2010 joining the Second Two Cases with the First Three Cases for joint administration. In addition, the Court entered an order appointing the Trustee as the trustee of the estates for the debtors in the Second Two Cases.

5. On July 22, 2010, the Court entered the Order Granting Substantive Consolidation, which consolidated the estate of the debtors in all five of the aforementioned cases.

6. Prior to these bankruptcy cases, JPW and SJH entered into a Rose Purchase Agreement dated effective as of January 1, 2009 whereby SJH would grow roses for JPW to purchase at the prices specified on Product Purchase Orders and then JPW would resell the roses.

7. On or about December 4, 2009, SJH, JPW and Wells Fargo Bank, N.A. ("Wells Fargo") entered into an Intercreditor Agreement, which contains a provision whereby SJH and Wells Fargo agree that they rank equally in priority to the 2009 rose

bushes and all cash and non-cash proceeds therefrom and that SJH and Wells Fargo will share ratably in all proceeds of the rose bushes.

8. The parties do not appear to dispute that SJH (along with Wells Fargo) holds a valid first priority security interest and lien in the rose bushes delivered to JPW and proceeds of such rose bushes and that a portion of the account receivable resulting from the sales constitute cash collateral securing SJH for the amounts due to SJH from JPW's purchase of the roses.

9. On May 12, 2010, JPW filed a motion seeking authorization to use cash collateral consisting of the proceeds of its account receivable secured by both SJH and Wells Fargo. SJH and Wells Fargo, as well as Rosetree Nursury, LLC, objected to the cash collateral motion (collectively, "Objections").

10. In support of the proposed use of cash collateral, JPW and the Trustee, upon his appointment, argued that SJH was adequately protected because the accounts receivable securing SJH were substantially greater in amount than the indebtedness to SJH and would be sufficient to cover both the proposed use of the cash collateral and the full repayment of SJH's secured claim.

11. The Court entered an Interim Order Granting Debtor's Motion for the Use of Cash Collateral on May 21, 2010 after the Objections were consensually resolved, which was followed by the Final Order Authorizing the Use of Cash Collateral entered on June 11, 2010 ("Cash Collateral Orders"). In the Cash Collateral Orders, the Court found that the SJH was "adequately protected by the equity in the Debtors' assets which secure [SJH's] claim."

12. Pursuant to the Cash Collateral Orders, SJH has been receiving proceeds of the JPW accounts receivable. The payments have been collected in a lockbox account with Wells Fargo ("Lockbox") and distributed by Wells Fargo in accordance with the Intercreditor Agreement.

13. According to SJH, JPW owed SJH $5,289,453.21 for the purchase of the 2009 crop rose bushes. As of the date of the hearing on this Motion, after deductions pursuant to the Intercreditor Agreement, SJH has received payments totaling $5,004,071.00, leaving an unpaid balance of $285,382.21. The outstanding accounts receivable are sufficient to pay SJH's claim, but, according to SJH, recent collections of the accounts receivable have considerably decreased, thereby threatening its full recovery.

14. The collection rate of outstanding accounts receivable is unknown, but there is a possibility that SJH will be paid in full from the accounts receivable. No evidence was presented at the hearing regarding collection efforts or other means to improve collections.

15. In addition to the unpaid balance of $285,382.21, SJH argues that, pursuant to the Rose Purchase Agreement and the Intercreditor Agreement, it is also entitled to $67,527.82 in attorneys' fees and costs in connection with the assertion and protection of SJH's rights as a secured creditor. Accordingly, SJH asserts the total remaining due from JPW for the 2009 crop purchases is $352,910.03.

16. At the hearing, SJH also clarified for the Court that, in accordance with the Cash Collateral Orders and the Intercreditor Agreement, it is seeking a superpriority claim for one-half of the remaining amount due.

17. Subsequent to the entry of the Cash Collateral Orders, on July 7, 2010, the Trustee filed an adversary proceeding, Adv. Pro. No. 10-80103-jw, ("Adversary") against SJH, along with Weeks Wholesale Rose Grower, Inc. and Woolf Horticulture, LLC (collectively, "Defendants") seeking injunctive relief and asserting claims against the Defendants for trademark infringement and related causes of action arising from the Defendants' alleged unauthorized use of the Debtors' patents and trademarks in the marketing and sale of certain roses from the 2010-11 crop grown by SJH.

18. In the Adversary, the Trustee also requested an order enjoining SJH from receiving any further funds pursuant to the Intercreditor Agreement being maintained in the Lockbox, which included proceeds from the collection of accounts receivable from the 2009 SJH rose crop bush. (See Adv. Pro. No. 10-80103, Application for Temporary Restraining Order, Docket No. 5.)

19. On August 5, 2010, the Defendants entered into a lengthy settlement agreement ("Settlement Agreement") with the Trustee fully resolving the Adversary and other issues between the parties, which was approved by order of the Court on August 24, 2010.

20. As part of the Settlement Agreement, the Trustee agreed to withdraw its request to freeze the Lockbox, and the Trustee agreed to instruct Wells Fargo to make payments to SJH of its portion of the Lockbox proceeds pursuant to the Cash Collateral Orders.

21. Additionally, section 5 of the Settlement Agreement, entitled "Release," states ("Release" or "Section 5"):

> For the valuable consideration set forth herein, receipt of which is hereby acknowledged, the Trustee, on behalf of himself, the Debtors and

their bankruptcy estates, and his transferees, assigns, attorneys, agents, and servants, and each of them and SJH, WH, Weeks and their transferees, assigns, attorneys, agents and servants, hereby release and discharge any and all claims they have or may have against each of them, and their respective current and former predecessors, successors, parents, affiliates, subsidiaries, and all of the aforementioned Parties' respective agents, employees, officers, directors, shareholders, and attorneys from all claims of any kind (including any claims for damages, interest, fees and/or attorney fees) that they may have with respect to the issues raised in the Litigation, the Debtors' Chapter 11 proceedings or any other matters between the Trustee and SJH, WH and Weeks, including without limitation, all claims that were asserted or could have been asserted by the Trustee in the Debtors' bankruptcy case or any other forum as of the date of this Agreement.  Notwithstanding anything to the contrary, the foregoing release is not intended to and shall not release or discharge claims of any kind against any individual officers, directors or employees of the Debtors that occurred or arose prior to the Petition Date, but the parties agree not to pursue such claims, if any, until after September 30, 2010.

## CONCLUSIONS OF LAW

### I.    *Arguments made by the Parties*

SJH argues it is entitled to administrative superiority status under §§ 507(a) and (b) for one-half of the remaining amount owed to it for the 2009 crop rose bushes it sold to JPW.  According to SJH, the Trustee has used the cash collateral in accordance with the Cash Collateral Orders, but the adequate protection has failed, and as a result of the Trustee's use of cash collateral, SJH's collateral is not sufficient to fully pay SJH's secured claim.

The Trustee argues that, according to the language in the Release, SJH released any and all claims of any kind, which would include claims for any failure of adequate protection, with respect to the Chapter 11 proceedings.  The Trustee maintains that the Release is clear on its face and constitutes a waiver and full release.

The Committee of Unsecured Creditors argues that SJH's Motion should be denied because its alleged shortfall in payment results directly and solely from its own agreement regarding the first lien rights it otherwise would have in the collateral pursuant to the Intercreditor Agreement.

At the hearing, SJH maintained that the Release should only apply to claims in existence when the Settlement Agreement was executed. SJH argues that the Release should not apply to its present claim because it only arises upon the failure of adequate protection, which occurred after the execution of the Settlement Agreement. Thus, the claim was not contemplated at the time of the settlement.

## II.    *Interpretation of the Settlement Agreement and Release*

The Settlement Agreement was negotiated by sophisticated parties with counsel and approved by an order of the Court, making the terms binding as to all parties. In re Derivium Capital, LLC, 380 B.R. 392, 403 (Bankr. D.S.C. 2007). Settlement agreements are considered contracts; therefore, the rules of contract construction apply. See In re A.H. Robbins Co., Inc., 173 F.3d 423, 423 (Table) (4th Cir. 1999) (citing United States v. ITT Continental Baking Co., 420 U.S. 223, 238, 95 S.Ct. 926 (1977)). "When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary and popular sense." C.A.N Enters., Inc. v. S.C. Health & Human Srvs., 296 S.C. 373, 377, 373 S.E.2d 584, 586 (1988). "A contract is considered 'ambiguous' only when it may fairly and reasonably be understood in more ways than one." Georgetown Steel Co., LLC v. Capital City Ins. Co., Inc., 318 B.R. 313, 321 (Bankr. D.S.C. 2004). When determining whether a contract is ambiguous, the language used should be given a reasonable meaning. Ecclesiastes Prod.

Ministries v. Outparcel Assocs., LLC, 374 S.C. 483, 498-99, 649 S.E.2d 494, 502 (Ct. App. 2007).  Ambiguities in a contract "may not be created by pointing out a single sentence or clause" In re The Fripp Group, Inc., C/A No. 08-01499-jw, slip op. (Bankr. D.S.C. Dec. 29, 2008) (citing Georgetown Steel Co., LLC v. Capital City Ins. Co., Inc., 318 B.R. at 321).

The Court has reviewed Section 5 of the Settlement Agreement and finds that its terms are not ambiguous and should be given their plain meaning.  Therefore, extrinsic evidence should not be considered.

Upon review, it appears that the Release contains very broad language, such as "release and discharge any and all claims they *have or may have* against each of them," "from all claims of any kind," and "may have with respect to the issues raised in the Litigation, the Debtors' Chapter 11 proceedings or any other matter between the Trustee and SJH" (emphasis added).   Also, the Release pertains to not only the parties involved in the Adversary, but also includes entities such as the parties' successors, predecessors, assigns, transferees, attorneys and agents.

The Court finds the Release was intended to be broader and cover more issues than just claims arising from or related to the Adversary Proceeding.  In addition, a sufficient relationship exists between the Settlement Agreement and any claims arising from SJH's 2009 rose crop.  As part of the settlement, the Trustee agreed to withdraw its request to freeze the proceeds from the 2009 rose crop in the Lockbox and authorize distributions to SJH.   Moreover, the Release itself expressly covers not only claims arising from the Adversary, but also claims arising in the Chapter 11 proceeding.

In considering the Settlement Agreement as a whole, the Court finds that the Release was meant to be a general release of all matters with the express, limited exception of claims against individual officers, directors or employees of the Debtors that occurred prior to the petition date. "Although a general release usually only includes claims in existence at the time it is executed, it may bar contingent and future claims when the intent of the parties to that effect is clear." Rotberg v. Dodwell & Co., 152 F.2d 100 (2nd Cir. 1945). The language used in the Release is broad and makes it clear that the parties contemplated the release of all present and future claims. The parties used the term "may have," which indicates the parties' intent to release and discharge future possibilities of claims. See Augustine Medical, Inc. v. Progressive Dynamics, Inc., 194 F.3d 1367, 1371 (Fed. Cir. 1999) (finding the phrase "may have" used in a settlement agreement was necessarily future-oriented).

SJH argues that the Release should not apply based upon the clause in the Release which provides, "as of the date of this Agreement." Initially, the Court finds that the language, "as of the date of this Agreement," is only referring to the immediately preceding phrase which discusses claims that were or could have been asserted by the Trustee. Further, when considering post-settlement claims, the issue is "whether the claimant had or possessed a claim, sufficiently to reserve it from a general release." Augustine Medical Inc., 194 F.3d at 1373 (internal quotations omitted). Parties entering into a settlement agreement have the burden to expressly reserve in the agreement any rights they wish to except from the agreement. Id. The Court notes that while a claim under § 507(b) arises upon the failure of adequate protection, SJH knew or should have known at the time it entered into the Settlement Agreement that it could have an

9

administrative superpriority claim, contingent upon the failure of adequate protection. Therefore, the claim, although contingent, existed at the time of the Settlement Agreement. In fact, the superpriority claim may still be contingent because there is a possibility SJH will be paid in full from the outstanding accounts receivable. Regardless, if SJH wished to reserve the right to bring an action for an administrative superpriority claim, it should have manifested its intent to do so expressly in the Release. See United States v. William Cramp & Sons Ship & Engine Bldg. Co., 206 U.S. 118, 128, 27 S.Ct. 676 (1907) ("[G]eneral language … indicates an intent to make an ending of every matter arising under or by virtue of the contract. If the parties intend to leave some things open and unsettled, their intent so to do should be manifest."). Important in the analysis of the case at hand is the recognition that the parties did intend to exclude some claims from the general release as indicated by the last sentence of the Release, which excludes certain claims against certain individuals from the release. However, nothing in this last sentence reserved a claim for administrative superpriority status.

The court in In re River Center Holdings, LLC, 394 B.R. 704 (Bankr S.D.N.Y. 2008), interpreted similar release language in determining whether a party could bring a section 506(c) claim that matured after the release was executed. The release language at issue included claims which the debtors "may hereafter have" against certain lenders. Id. at 716. The court found that the release language was broad and held that "[i]f the parties had intended to carve out … any section 506(c) claims that had not yet matured … they could have and should have used diametrically opposite language." Id. at 716-17. Similar to the parties bound by the release in River Center Holdings, SJH did not reserve any claims pursuant to §§ 507 (a) and (b).

Having found that the Release provision of the Settlement Agreement prevents SJH from asserting an administrative superiority claim, it is unnecessary for the Court to address at this time whether any failure of adequate protection could be primarily attributable to the Intercreditor Agreement or whether SJH waived any rights or should be stopped from asserting a 507(a) and (b) claim under the circumstances of this case by entering into the Intercreditor Agreement.

The Court concludes that the language used in the Release is sufficiently broad to indicate that the parties intended it to include contingent and future claims, such as the administrative superpriority claim at issue. Therefore, the Court hereby denies the Motion.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**12/29/2010**



_____
Chief US Bankruptcy Judge
District of South Carolina

Entered: 12/29/2010